May it please the Court. Good morning, Your Honors. Darlene Ricker on behalf of the Appellant Jack Gray. What brings us here today is the tension between the Jackson and Del Muro cases and their application to the sole issue in this case, which is whether Mr. Gray was entitled to substitute counsel to argue his new trial motion. Both Jackson and Del Muro were cited in the order granting the COA and in the magistrate's report seemingly as conflicting authority. In Jackson, which was a habeas case, as is this matter, the Court found there was no Sixth Amendment violation because no evidentiary hearing was held. Plus, there was no conflict because the attorney that the client was trying to substitute out was never argued, was never required to argue his own incompetence. Del Muro, which was a direct appeal, presented a different situation and a different finding. What do we make of the fact that Del Muro's a direct appeal and this is a habeas collateral attack? The only difference, Your Honor, would be that, would be the Teague issue. Is that an important difference? It is, but I believe that can be reconciled in this case. Would the Court like me to address that? That would be helpful, I think. I don't believe there's a Teague bar in this case because we're not asking for application of a new rule. Rather, we're asking for relief on the facts of Mr. Gray's case and for the Court to apply the standards, the longstanding standards of Wood v. Georgia, which was the opinion issued in 1981, and Mr. Gray was convicted in 1987. And I'm sure the Court is based that the trial court is required to appoint substitute counsel if a hearing shows a breakdown in the attorney-client relationship or an actual conflict. Okay. And you're arguing both. You're arguing that the Court should have found a breakdown and that there was also an actual conflict. Yes, Your Honor. We disagree with you on the breakdown. What's the actual conflict here? When does the actual conflict mature in this case, given Jackson? Yes, Your Honor. Here is the problem. The record isn't sufficiently developed to show the actual conflict because the trial court really didn't focus its inquiry on the conflict issue. The trial court kept addressing whether or not the existing counsel were competent without inquiring into the conflict. Well, Jackson tells us, doesn't it, that just by challenging the competency of trial counsel, that doesn't produce an automatic conflict, correct? That's right, Your Honor. It doesn't. So what converts it into a conflict? Delmero actually proceeded to an evidentiary hearing. Correct. There was no request for an evidentiary hearing in this case. Isn't that correct? That is correct, Your Honor. So at what point, you've got two, let's call them extremes, if you will, for discussion purposes. You have the mere filing of the motion in Jackson and you have an evidentiary hearing in Delmero. In this case, there were some questions asked, brief questions asked by the trial judge. The attorney responded briefly. Is it your argument that's enough to convert it into an actual conflict? On the facts of this case, yes, Your Honor, because the record shows I believe there were two Marsden in California court parlance hearings. And those, what Mr. Gray said at those hearings so indicated a breakdown that the court should have recognized it as such. He had a whole litany. I understand that.  Now, I'm still trying to understand because, thank, I could be wrong, but I read Delmero as saying it found an actual conflict because once it went to an evidentiary hearing, the attorney was put in the position of having to examine witnesses who were impeaching the attorney's own court product. But it didn't rest, and given Jackson presumably would have had trouble doing so, at least under circuit law, it didn't rest on the mere fact that the attorney's trial competency had been put at issue. That's correct, Your Honor, and the problem I see with Delmero is that it creates a bit of a catch-22 for the appellant because if the trial court does order an evidentiary hearing and does have existing counsel argue it, then it creates an inherent conflict under Delmero. If it doesn't order an evidentiary hearing, the record is incomplete and the appellant hasn't been able to establish the conflict. Well, I take your point, but I think there's a little more there, too, which is an important aspect here. I agree. Once the attorney's competency is put at issue, it puts the attorney in an awkward position trying to stand up in front of his client who's just been convicted by a jury and say, yes, I did all that I properly should have done. And in this case, the court went on to ask his reaction and gave him the opportunity to so state. But Jackson says, no, you can't automatically acquire appointment of substitute counsel simply because the defendant puts at issue the competency of his trial counsel. It is a practical matter. It wouldn't almost in all cases that be a motion that's going to be or a contention that's going to be made after the defendant's just lost. He's going to the slammer. He's going to say, I'm going because the attorney wasn't confident. So Jackson says, wait, there's more than that. So the more than in this case you're saying is that the judge actually initiated some inquiry, but you're saying that there was enough evidence that he should have apparently gone to an evidentiary hearing, and yet that request wasn't made and you haven't appealed that issue. So I'm a little uncertain as to how we slice and dice this case. Could you help us? Yes, Your Honor. What I'm suggesting, and I hope I'm not repeating myself here, is that had the trial court made the proper inquiry as to the conflict, then we would have known. Well, what would have been the proper inquiry? Trial court says, I'm sure the court knows, will typically when a client asks for substitute counsel will typically ask the client, what is the problem? Are you having a problem communicating? Is the attorney returning your calls? And they try to resolve it. They try to put the two together. But didn't the trial judge do that here and said, what's the problem with your trial counsel? And Mr. Ray had a bunch of ‑‑ had a litany of things that he had done. He hadn't subpoenaed the gloves that were the wrong size and so on. The O.J. witness or the O.J. defense rights. I mean, so the trial judge has to do that to say, is there any merit? Is there any merit to your contention? That's right, Your Honor. Implicitly, didn't the trial judge find there's no merit to the contention here, to Gray's contention? In other words, if there was some merit to it, then the trial judge would have proceeded to maybe sui sponte to have an evidentiary hearing on his own. Perhaps, Your Honor, but as I see it, the problem with it was that the trial court found a couple of times only that the lawyer was competent. And you're not just entitled to competent counsel. You're entitled to counsel with conflict‑free counsel. But any time that there's a dispute between a defendant and his counsel over the question of trial strategy, that we can ‑‑ that you can request new counsel? You can, but you probably won't be successful if it's just trial strategy. Okay. But many of the things that Mr. Gray raised here went to trial strategy, don't they? The question of whether we put this piece of evidence on or whether we withhold it, whether we make this argument or this motion or whether we don't. The question of competence, then, would seem to be quite relevant here because all of those have to do with judgment calls as opposed to sort of interpersonal relationship conflicts, which there doesn't appear to be here. By the time the district court says, no, I'm going to deny your motion, Mr. Gray is still referring to his attorney as Mark and asking whether they can go on. Yes, Judge Bybee. A lot of the ‑‑ Mr. Gray's complaints did go to what would be considered trial strategy, but some of them went beyond that and they would go to ineffective assistance, such as failure to have evidence tested and failure to have the evidence examined and that type of thing. So some of it did exceed trial strategy, but pure investigation that a trial lawyer is required to do. Okay. Are you contending, counsel, that there was ineffective assistance at counsel below? Well, the trial court found otherwise. I'm suggesting that the record should be further expanded to determine that. In other words, if there were a conflict, there is per se ineffective assistance. So basically I'm saying it can't be determined without a ‑‑ Although ineffective assistance at counsel could come in a couple of different forms. One could be that sort of interpersonal, I just don't get along with this person. I can't stand to be in the same room with my counsel. And the other one is the guy is returning my phone calls. He's not making the appropriate motions here. And so I think that there is an effect on what happens at counsel in that there is a period of time in which everything has broken down in sort of the ordinary standards to which we hold our counsel. But District Court has closed one of those avenues for you, hasn't it? To some extent, yes, Your Honor. I see we're about out of time, so unless the Court has any further questions. I think we'll give you a minute for rebuttal. Thank you. Okay. Mr. Kahn. Good morning, Your Honors. Good morning. Let me please the Court. Deputy Attorney General Jeffrey Kahn here on behalf of the Respondent. A couple of quick points I'd like to make about Jackson. This, I think, is very significant. This case was final as of April 18, 1990. Jackson was published in December of 1990. So in terms of Jackson's survey of the legal landscape for Teague purposes, that would encompass everything involved with the state proceedings in this case. So, you know, just as Teague says that the state court had a right to rely upon the legal landscape as it existed and make good faith interpretations of it, as to Jackson, that would also be true as to Mr. Gray. Well, the law, though, under Coulier was that if there's an actual conflict between counsel and a client where their interests are adverse, then prejudice is presumed. So, I mean, if this case were like Del Muro, for example, it would clearly be a different case from Jackson. I think that's absolutely true. Would you agree we're sort of somewhere between Jackson and Del Muro? No, I think we're worse with Jackson. Why is that? Because this case never rose to the point where the trial court, the state trial court, placed Mr. Gray's attorney in the position of making an argument against himself. Well, I'm not quite sure that's the case. Didn't he actually ask him what he thought of the charges? And did he respond? He responded that... Did he tell it? You can challenge me on... Well, I think that he essentially... I'm sorry. He essentially demurred. Well, he didn't demur. He gave a response, didn't he? He put something in the record to say, I did talk to the witnesses, or I did... He didn't just say, I won't respond at all. He did make that statement. At the end of the day, though, I don't think that statement was dispositive of any of Mr. Gray's pro promotions or the new trial motion. Well, let me just be sure we're talking about the same thing. Del Murro does, in recognition of Jackson, and granted it's a federal case and it's on direct appeal, so they aren't dealing with the Teague issues, but what they are talking about and what they explicitly say is that once you get to a situation where the defendant is charging his lawyer with ineffective assistance and you go to, as they say, a hearing on it, and in this case there was a hearing, it was a motion for new trial hearing, there's an inherent conflict. And then they say when it goes to an evidentiary hearing, that conflict is heightened, and so much so that in that case they found that it violated Coulier and therefore prejudice is presumed. So we scale back from Jackson, as I remember, I could be wrong, but I thought Jackson, he had just simply made the allegation and no involvement of the lawyer having to say anything in defense of his activity. And it seems to me that if a judge turns, I turn to you and say, well, you know, your client just accused you of being incompetent or ineffective. What's your response to that? He's beginning to, I mean, what are you going to say? Don't you have at that point a pretty tough conflict? Well, first, and I'm not certain of this, but I'm reasonably confident that the posture in which the trial court posed that question to counsel was during state court in Marsden proceedings. That is when Mr. Grace sought new counsel rather than when he was seeking a new trial. So I don't think that pushes us all the way to Del Moro. I mean, I think it's necessary that when a defendant with appointed counsel is seeking a new lawyer, be it on IAC grounds or any other grounds, there's necessarily a tension between them. But even Jackson recites instances and cases in which this court has stated that that does not by itself give rise to the need for substitution of counsel. To the extent that, and I believe this is true, appellant is attempting to shift the focus to make Del Moro a new standard for state courts to contemplate these motions. And that's the sense that I have, that appellant would at this point have this court enforce some sort of new standard for granting these evidentiary hearings and thus to create the need for the substitution of counsel. That's unexhausted, as are any of these contemplated IAC claims. And they also, not only were they not brought before the state courts, they were not brought before the district court. Unless the court has any further questions. No questions. Thank you. Thank you. All right, fine. Thank you, counsel. We appreciate the argument. The case just argued will be submitted.
judges: Fisher, Bybee, Mahan